## NANCY D. LEGGATE vs. JOSEPH B. CLARK.

A deed by a man and wife of her land, made when he was insane, is, under the Gen. Sts. c. 108, § 3, void, and not merely voidable.

In a writ of entry by a woman to recover land from one to whom she and her husband have given a deed thereof, on the ground of her husband's insanity, the order of a judge of probate under the St. of 1862, c. 223, § 3, committing the husband to a lunatic hospital, is not admissible to prove his insanity.

MORTON, J. The demandant, who is a married woman, was the owner of the land in question, to her sole and separate use, on February 18, 1870. On that day she executed a warranty deed, in which her husband joined, to Lawrence McLaughlin, from whom the tenant derives his title.

The first question in the case is whether it was competent for the demandant to show that her husband was insane at the time he executed the deed, and whether his insanity would make the deed void.

At common law a deed of land by a married woman in which her husband does not join, is absolutely void. The disability of coverture makes her deed inoperative to convey any estate whatever. *Lowell* v. *Daniels*, 2 Gray, 161. The statute from which alone she derives her power to convey her separate property, provides that no conveyance by her of any real property, except a lease for a term not exceeding one year, " shall be valid, without the assent of her husband in writing, or his joining with her in the conveyance, or the consent of one of the judges of the Supreme Judicial Court, Superior Court or the Probate Court, granted on her petition in any county, on account of the sickness, insanity or absence from the state, of her husband, or other good cause." Gen. Sts. c. 108, § 3. Since the enactment of this statute it has always been held that the deed of a married woman executed by her alone, and without the assent of her husband or of one of the judges of the three courts named, is wholly inoperative and void. *Townsley* v. *Chapin*, 12 Allen, 476. *Jewett* v. *Davis*, 10 Allen, 68. *Hills* v. *Bearse*, 9 Allen, 403. *Melley* v. *Casey*, 99 Mass. 241. In the case at bar the husband joined in the deed of conveyance, but the jury have found that at the time he did so he was insane.

Such assent was of no effect. The statute was designed, not only to enlarge the powers of the wife, but also to guard her interests by requiring the sanction and assent of her husband to the conveyance. It contemplates the intelligent assent of a sound mind, capable of contracting and advising. Otherwise it loses its character as a protective enactment for the benefit and security of the wife's interests. The special provision that in case of the husband's insanity the assent of a judge of the Supreme Judicial, Superior or Probate Court may be substituted for his, strengthens this conclusion, showing that it was the understanding of the Legislature that the assent of an insane husband would not give validity to the deed of the wife. We think therefore that the learned judge who presided at the trial correctly ruled that if the demandant's husband was at the time he signed the deed insane, he could give no such assent as would satisfy the statute. The deed was void to the same extent as if there had been no assent by the husband, and no subsequent action or failure to act on his part could give it validity. The cases cited by the tenant to the point, that the deed or other contract of an insane person is voidable only, and may be ratified by him after he becomes sane, do not apply to this case. No subsequent assent or ratification by the husband could fulfil the requirements of the statute, or give validity to the deed as the deed of the wife.

But we are of opinion that the presiding judge erroneously ruled that the order of the judge of probate committing Leggate to the insane hospital was admissible and *prima facie* evidence of his insanity. The question before the judge of probate was different from the issue in this case. The proceedings before him were under the St. of 1862, *c.* 223, § 3, which authorizes judges of probate to commit to either of the state lunatic hospitals " any insane person who, in their opinion, is a proper subject for its treatment or custody." The issue before the jury was whether Leggate was of sufficient mental capacity to give an intelligent assent to his wife's conveyance of real estate. A man may be a proper subject for the treatment and custody of a lunatic hospital, and yet have sufficient mental capacity to make a will, to enter into contracts, to transact business and to be a witness. *Kendall*

v. *May*, 10 Allen, 59. The order of the judge of probate was in a proceeding to which the tenant was not a party, and as to which he had no opportunity to be heard, and was upon an issue different from the issue on trial. The demandant contends that it is analogous to an inquisition of lunacy, or a decree of a judge of probate appointing a guardian of an insane person, and therefore admissible against strangers. But an inquisition of lunacy under the English system, and proceedings under our system to appoint a guardian of an insane person, are in the nature of proceedings *in rem*, and are designed to fix the *status* of the person proceeded against. Under our system careful provision is made for notice to the alleged insane person, and for a full hearing, and the decree fixes the *status* of the ward as an insane person " incapable of taking care of himself." The statutes give the care and management of his person and estate to the guardian and take from him the capacity to make contracts or to transfer his property. The necessary effect of the decree is that the ward is in law, what the decree declares him to be, incapable of taking care of himself, as to all the world. Otherwise the object of the statute would be entirely defeated. Gen. Sts. *c.* 109. *Chase* v. *Hathaway*, 14 Mass. 222. *Leonard* v. *Leonard*, 14 Pick. 280. But an order under the St. of 1862, *c.* 223, § 3, is not of this character. It does not pretend to declare the person committed to the hospital to be incapable of transacting business. It does not take from him the care and management of his estate. It affords a justification for the restraint of his person, but is not designed to fix his *status*. We think that the admission of the order of the judge of probate and the ruling as to its effect were erroneous.

The demandant contends that as all the evidence upon which the judge of probate based his order was subsequently introduced in this case, and as the other evidence tended strongly to show the insanity of Leggate, the tenant was not prejudiced by the admission of the record. But it is impossible for us to say what effect the evidence and the instructions thereon had upon the minds of the jury. They may have had a controlling influence in leading their minds to the verdict which they rendered. As

there must be a new trial upon this ground, it is not necessary to consider the other questions presented by the bill of exceptions.

*Exceptions sustained.*

*C. R. Train & W. F. Slocum*, for the tenant.

*C. L. Woodbury & C. Cowley*, for the demandant.